**In re Dushan S. ZDRAVKOVICH, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 01–BG–96.**

District of Columbia Court of Appeals.

Argued April 22, 2003.

Decided Sept. 11, 2003.

Dushan Zdravkovich, pro se.

Julia L. Porter, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN, SCHWELB and RUIZ, Associate Judges.

STEADMAN, Associate Judge:

Before us is one of our frequent reciprocal discipline proceedings. Respondent Dushan S. Zdravkovich ("Zdravkovich") has been indefinitely suspended in Maryland. The Board on Professional Responsibility ("Board") has recommended that Zdravkovich be reciprocally disciplined by a suspension of nine months from the practice of law in the District of Columbia, and that he be required to demonstrate fitness

prior to reinstatement. We reject Zdravkovich's exceptions to this recommendation and impose the recommended sanction.

### A.

On December 4, 2000, the Maryland Court of Appeals indefinitely suspended respondent Zdravkovich from the practice of law in Maryland based on its determination that respondent had violated the following Maryland Rules of Professional Conduct in his representation of two clients in related litigation: 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 3.1 (meritorious claims and contentions), and 8.4(d) (conduct prejudicial to the administration of justice). The details of the events leading to his sanction in Maryland are spelled out at length in the published opinion, *Attorney Grievance Comm'n of Maryland v. Zdravkovich,* 362 Md. 1, 762 A.2d 950 (2000), and we need not recount them herein.[1]

As we regularly do in cases in which an attorney is suspended in another jurisdiction, we entered an interim order on February 12, 2001, suspending Zdravkovich from the practice of law in this jurisdiction pursuant to D.C.Bar. R. XI, § 11(d), and referred the matter to the Board. This routine order asked the Board to hear from Bar Counsel and Zdravkovich and, thereafter, to recommend to this court whether identical, greater, or lesser discipline should be imposed as reciprocal discipline or whether the Board instead would

---

1. We note, however, that a separate disciplinary action has been initiated against Zdravkovich in Maryland. *See Attorney Grievance Comm'n of Maryland v. Zdravkovich,* 375 Md. 110, 825 A.2d 418 (2003) (deferring, for 60 days, a decision as to whether a default order finding Zdravkovich had, among other charges, misappropriated client funds, was properly entered against him so that Zdravkovich might have an opportunity to answer the subject petition and to comply with Bar Counsel's discovery requests). This matter is still pending.

proceed de novo pursuant to Rule XI, § 11.[2]

Rule XI, § 11(c) establishes the standards for reciprocal discipline and provides as follows:

Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

Unless there is a finding by the Board under (1), (2), or (5) above that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.

On March 14, 2001, Bar Counsel filed a statement with the Board, pursuant to BD. ON PROF'L RESPONSIBILITY R. 8.1, recommending that reciprocal, but not identical, discipline be imposed on Zdravkovich. Zdravkovich, on June 18, 2001, filed a brief in which he argued that the Board should reject the Maryland Court of Appeals' findings because he had been denied an opportunity to be heard in Maryland due to illness and that there was such infirmity of proof before the Maryland Court of Appeals that the Board should reject that court's conclusions. On June 22, 2001, Bar Counsel filed a reply to Zdravkovich's brief arguing that Zdravkovich was merely attempting to relitigate the facts of his disciplinary proceeding in Maryland and had presented no new evidence.

On March 11, 2002, the Board filed its report and recommendation with this court. The Board ruled that Zdravkovich had failed to prove by clear and convincing evidence that any of the five grounds listed in Rule XI, § 11(c) stood in the way of reciprocal discipline[3] and recommended the imposition of reciprocal, but not identical, discipline. Following past practice in indefinite suspensions of this type, the Board recommended that Zdravkovich be suspended from the practice of law in the District of Columbia for nine months and that, as a condition of reinstatement, he be required to demonstrate fitness before readmission.

This matter comes before us on Zdravkovich's exceptions to the Board's

---

**2.** Although the order did not so specify, the relevant subsection is § 11(g).

**3.** The Board rejected Zdravkovich's contention that he was deprived a fair opportunity to respond to the charges against him because he was ill at the time of the evidentiary hearing on those charges. The Board observed that Zdravkovich had presented no evidence

to suggest that the Maryland court unfairly denied him a continuance or some other accommodation. The Board also found that no infirmity of proof as to Zdravkovich's misconduct existed because the vast majority of such misconduct plainly violated analogous District of Columbia rules.

recommendation.[4] Renewing arguments made to and rejected by the Board, Zdravkovich asserts that there was infirmity of proof as to his misconduct such that this court should not accept the conclusion of the Maryland Court of Appeals that he engaged in such misconduct, and contends that he was deprived of a fair opportunity to respond to the charges against him because he was seriously ill at the time of the evidentiary hearing concerning those charges. Zdravkovich, at oral argument and for the first time, also asserted that his suspension should have been imposed *nunc pro tunc* to February 12, 2001, the date on which he was suspended in this jurisdiction, because over two years have passed between the imposition of his indefinite suspension in Maryland and the consideration of his appeal herein.

### B.

Reciprocal bar disciplinary cases account for a significant percentage of disciplinary actions in the District of Columbia. The District of Columbia Bar has more than 77,000 members, over 55,000 of whom maintain active membership with the Bar. APR. 2003 D.C. BAR MEMBERSHIP DISTRIBUTION REP at 1. We are advised that each of over 42,000 of these active members has certified to our Bar that he or she is also admitted in another jurisdiction.[5] Indeed,

it remains common for our thousands of Washington Metropolitan Area members to also practice in Maryland or Virginia. It should come as no surprise, therefore, that our Bar had 31 reciprocal discipline cases in 2002, a figure that dwarfs the amount of reciprocal discipline procedures in other jurisdictions. *See* Materials prepared by Board on Professional Responsibility District of Columbia Court of Appeals for the Thirtieth Annual Disciplinary Conference of the District of Columbia (April 29, 2003) (on file with the District of Columbia Board on Professional Responsibility and the District of Columbia Court of Appeals) [hereinafter Disciplinary Conference Materials].[6]

■■■■ We have adopted a rigid standard for reciprocal bar discipline cases. As already indicated, we presumptively impose identical reciprocal discipline, unless the attorney demonstrates by clear and convincing evidence that the case falls within one of five specified exceptions articulated in Rule XI, § 11(c). *In re Gardner*, 650 A.2d 693, 695 (D.C.1994); *In re Zilberberg*, 612 A.2d 832, 834–35 (D.C. 1992). While the plain language of Rule XI, § 11(c) places the burden on the disciplined attorney to establish by clear and convincing evidence that a lesser sanction is warranted, the Office of Bar Counsel also has standing to object to the imposition of identical discipline, see, e.g., *In re*

---

4. The delay of slightly more than a year in calendaring this case was due, in large part, to the following: (1) Zdravkovich's repeated requests for extensions of time to file his brief; (2) Zdravkovich's repeated motions to extend time to file a response to Bar Counsel's motion to strike the attachments to his brief, and (3) Zdravkovich's January 8, 2003 request to schedule oral argument on his case in late April of 2003.

5. For some twenty years, the District of Columbia has had a liberal policy of admitting by motion attorneys admitted in another American jurisdiction. D.C.App. R. 46(c). As

a consequence, of the approximately 3,000 new admittees to our Bar each year, less than ten per cent are admitted by examination and the remainder by motion. DISTRICT OF COLUMBIA COURTS, 2002 ANN. REP. at 42.

6. In comparison, the California Bar, which includes more than twice as many members, had 14 cases in 2001 and averages only 12 reciprocal discipline cases per year; the Michigan Bar had six such cases in 2002, and the Maryland Bar had only one. Disciplinary Conference Materials, *supra*.

*Reid,* 540 A.2d 754, 758 (D.C.1988), and may recommend a different sanction when it believes an exception applies. *See, e.g., In re Berger,* 737 A.2d 1033, 1040 (D.C. 1999). Such instances, however, should be rare. Underlying our strict standard in reciprocal bar discipline cases is not only the notion that another jurisdiction has already afforded the attorney a full disciplinary proceeding, but also the idea that there is merit in according deference, for its own sake, to the actions of other jurisdictions with respect to the attorneys over whom we share supervisory authority. *In re Velasquez,* 507 A.2d 145, 147 (D.C.1986). *See also In re Childress,* 811 A.2d 805, 807 (D.C.2002). Our standard in reciprocal bar discipline proceedings comports with constitutional due process requirements because the attorney either has had an evidentiary hearing or had the right to one. *In re Richardson,* 692 A.2d 427, 434 (D.C.1997). It also is firmly established that principles of collateral estoppel apply in reciprocal discipline cases. *See, e.g., In re Shearin,* 764 A.2d 774, 777 (D.C.2000); *In re Benjamin,* 698 A.2d 434, 440 (D.C. 1997). Put simply, reciprocal discipline proceedings are not a forum to reargue the foreign discipline.

 Here, Zdravkovich responded to the show cause order by filing a brief in which he argued both that he was denied due process in Maryland because he was unable to testify and that the Maryland decision suffers from an infirmity of proof. The Board quite rightly rejected these arguments. Pursuant to the principles set forth above relating to a hearing already afforded in the other jurisdiction, Zdravkovich is not entitled to relitigate or collaterally attack the findings or judgment of the Maryland Court of Appeals. *See In re Shearin,* 764 A.2d at 777. *See also In re Bridges,* 805 A.2d 233, 235 (D.C.2002) (holding that the infirmity of proof "exception is not an invitation to the attorney to relitigate in the District of Columbia the adverse findings of another court in a procedurally fair setting"). The record shows that Zdravkovich was afforded a full hearing before a trial judge in Maryland, and obtained review of the trial judge's findings of fact and conclusions of law from the Maryland Court of Appeals.[7] Furthermore, the Board properly relied on those findings and conclusions in rendering its recommendation. *In re Shearin,* 764 A.2d at 777. Zdravkovich's contention that he was denied due process because of his health problems also lacks merit. Nothing in the record establishes that the Maryland trial court denied Zdravkovich an opportunity to be heard or to present evidence. Nor does the record reveal any evidence that Zdravkovich sought a continuance or that the Maryland trial court denied him any accommodation. It was Zdravkovich's duty to prove by clear and convincing evidence that reciprocal discipline should not be imposed. *Cf. Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982).

### C.

 Zdravkovich's case presents one further aspect that merits exposition. As

---

7. Bar Counsel, on behalf of the Attorney Grievance Commission, and at the direction of the Review Board, filed a petition with the Maryland Court of Appeals for disciplinary action against Zdravkovich. The Maryland Court of Appeals then referred the matter to a trial judge sitting in the Circuit Court for Anne Arundel County, Maryland to conduct an evidentiary hearing and to make findings of fact and conclusions of law in accordance with the relevant Maryland Rules. A hearing was held, and subsequently, the trial judge issued her findings and conclusions, recommending Zdravkovich be indefinitely suspended from the practice of law. Zdravkovich took exception to the trial judge's findings and sought review from the Maryland Court of Appeals, which addressed his exceptions and affirmed the trial judge's findings. *See Zdravkovich,* 762 A.2d at 952, 966–67.

we observed earlier, generally, we impose identical discipline in reciprocal discipline cases. *See, e.g., In re Zilberberg,* 612 A.2d at 834. However, in those reciprocal discipline cases in which we impose identical discipline, few, if any, complications arise. In the instant proceeding we are presented with a Maryland sanction—indefinite suspension—for which the District of Columbia's disciplinary system lacks a precise equivalent. While we may have appeared, at times, to be reluctant, even in reciprocal cases, to impose a form of discipline not authorized by Rule XI, § 3(a) in original disciplinary proceedings in this jurisdiction, see, e.g., *In re Coury,* 526 A.2d 25, 25–26 (D.C.1987), we are not aware of any provision prohibiting such discipline and indeed, more recently, we have demonstrated a willingness, in certain situations, to apply the foreign discipline in haec verba. *See, e.g., In re Blades,* 766 A.2d 560, 561 (D.C.2001); *In re Anagnostiadis,* 765 A.2d 548, 549 (D.C.2001).

With respect to the imposition of indefinite suspensions in other jurisdictions, a form of discipline we do not employ, a review of our precedents reveals three distinct approaches, depending on the nature of the case. In cases for which the original disciplining court has developed no factual record but has imposed indefinite suspension with no minimum period, we impose indefinite suspension with the right to apply for reinstatement after being reinstated in the original jurisdiction or after five years,[8] whichever comes first. *See, e.g., In re Blades,* 766 A.2d at 561; *In re Anagnostiadis,* 765 A.2d at 549. When the original disciplining jurisdiction imposes indefinite suspension with the right to apply for reinstatement after a minimum period of time, we view such sanctions as the functional equivalent of a suspension for the length of time before the right to reapply is allowed, coupled with a requirement of fitness. *See, e.g., In re Berger,* 737 A.2d at 1039 n. 10; *In re Powell,* 646 A.2d 340, 342 (D.C.1994). When, as here, the original disciplining court has imposed an indefinite suspension with no minimum term of suspension and after conducting a full evidentiary hearing, we have indicated that a fixed period of suspension plus a fitness requirement is appropriate reciprocal discipline. *See, e.g., In re Dietz,* 675 A.2d 33, 36 (D.C.1996). *See also In re Lilly,* 765 A.2d 547, 548 (D.C.2001); *In re Perweiler,* 761 A.2d 278, 278 (D.C.2000). When we have required proof of fitness of an attorney as reciprocal discipline and that attorney has been summarily reinstated in the original disciplining jurisdiction either without objection from the Bar Counsel or equivalent in that jurisdiction, or without a hearing as contemplated in *In re Berger,* 737 A.2d at 1044–1045, we have permitted that attorney to seek vacatur of our fitness requirement pursuant to the guidelines set forth in Bd. on Prof'l Responsibility R. 8.7. *See, e.g., In re Atkinson,* 785 A.2d 318, 321 (D.C.2001); *In re Berger,* 737 A.2d at 1044–1045.[9] However, we have recently held that, when the misconduct is serious enough, we will not waive a plenary hearing on fitness prior to reinstatement in our jurisdiction. *In re Childress,* 811 A.2d at 808.

A possible problem with the third approach, in which we impose a fixed suspen-

---

8. Even in the case of disbarments, our rules permit an attorney to reapply for admission after five years, although such readmission is by no means guaranteed. D.C.Bar. R. XI, § 16(a); *In re McBride,* 602 A.2d 626, 637 (D.C.1992) (en banc).

9. We are not aware of any instance where, in the third approach, involving a definite term of suspension in the District, the attorney has before the expiration of that term been readmitted in the foreign jurisdiction and on that basis has sought earlier readmission here.

sion term based on the record developed in the foreign jurisdiction, is that, even when the attorney makes no response to the show cause order, the Board is required to make a determination, much as it would in an original proceeding, as to the appropriate sanction to be imposed, guided, presumably, by the sanctions we have imposed in similar cases so as not to "foster a tendency toward inconsistent dispositions for comparable conduct." Rule XI, § 9(g). *See also In re Bernstein,* 707 A.2d 371, 377 (D.C.1998). As the report now before us demonstrates, this task can be a substantial one and should be obviated whenever possible. Of that report totaling sixteen pages, ten are devoted to the question of the appropriate length of time for the fixed period of suspension in the District, and much of the remainder of the report is devoted to a detailed exposition of the facts, on which the District sanction must turn. Yet before us, Zdravkovich does not identify as an exception the appropriateness of that period, and we, therefore, give it the added deference afforded to uncontested cases. *See, e.g., In re Goldsborough,* 654 A.2d 1285, 1287 (D.C.1995). Nor has he sought reinstatement in Maryland or, at least until oral argument, in the District despite the extensive passage of time.[10]

As the varied approaches we have taken in reciprocal discipline cases involving indefinite suspensions reveal, neither we nor our rules mandate a specific procedure. In reciprocal discipline cases such as Zdravkovich's, in which the foreign jurisdiction has developed a factual record but imposed an indefinite suspension without a required minimum period of suspension before a petition for reinstatement may be filed, the Board might consider adopting a uniform policy of imposing the same reciprocal discipline as in cases in which no such record has been developed; viz., an indefinite suspension with the right to reapply for reinstatement in the District when reinstated in the foreign jurisdiction or in five years, whichever first occurs. Any respondent who believes that, given the factual record in the foreign jurisdiction, the District would impose a "substantially different" fixed time period could be permitted to make such a showing under Rule XI, § 11(c)(3) or (4). We would anticipate, however, that such petitions would be rare, given the ability of the attorney to shorten the period simply by obtaining reinstatement in the state of the original discipline, most probably the attorney's principal place for the practice of law.[11] Another alternative procedure might be to defer any such determination of a fixed period until and unless the attorney should apply for reinstatement and the determination could be made at that time.

For purposes of our review herein, however, we look to our present normal procedures for imposing reciprocal discipline when a foreign jurisdiction has imposed an indefinite suspension. A fixed period of suspension constitutes appropriate reciprocal discipline because Maryland has already conducted a full evidentiary hearing. *See In re Lilly,* 765 A.2d at 548;

10. Where an attorney has been suspended for a fixed term in a foreign jurisdiction without a requirement of proof of fitness and an interim suspension has been imposed here pursuant to Rule XI, § 11(d), and the term of the foreign suspension has expired before the completion of proceedings here, we have lifted the interim suspension in the District upon an appropriate motion by the attorney.

11. We wish to make clear that we are simply propounding this course of action as one possibly worthy of further study, recognizing that our factual assumptions and presumptions may well be contrary to the experience of the Board and Bar Counsel.

*In re Perweiler,* 761 A.2d at 278. As already indicated, the term itself is not challenged by either Zdravkovich or Bar Counsel.

▆▆▆▆ Concerning Zdravkovich's contention that his suspension should have been imposed *nunc pro tunc* to February 12, 2001, the date on which he was suspended in this jurisdiction, we note first that this argument was raised for the first time at oral argument and we need not consider it. While the Board's report on the imposition of reciprocal discipline comes to us in the form of a recommendation and while we have ultimate responsibility for sanctioning members of our Bar, the Board's recommendation "comes to us with a strong presumption in favor of its correctness, and respondent bears a heavy burden to successfully establish claimed exceptions." *In re Hager,* 812 A.2d 904, 911 (D.C.2002). Indeed, we "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record" and "shall adopt the Board's recommended sanction unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct." Rule XI, § 9(g)(1). Just as in an appeal from a trial court or an administrative agency, a disciplinary proceeding before this court is not the appropriate occasion to raise an issue for the first time. *See, e.g., Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967); *Waugh v. D.C. Dep't of Employment Servs.,* 786 A.2d 595, 596 (D.C.2001).

In any event, at the time of oral argument, Zdravkovich still had not filed the affidavit required under Rule XI, § 14(g). No period of suspension will begin to run for reinstatement purposes until the filing of such an affidavit. Rule XI, § 16(c). *See, e.g., In re Slosberg,* 650 A.2d 1329, 1331–33 (D.C.1994).[12] Zdravkovich, like any respondent in a reciprocal discipline case, has received ample notice of the affidavit requirement.[13] Under these circumstances, there is no basis whatever to make Zdravkovich's discipline *nunc pro tunc* to February 12, 2001.[14] Accordingly, it is

ORDERED that respondent Dushan S. Zdravkovich be suspended from the practice of law in the District of Columbia for a period of nine months, and that, after that nine month period, respondent be required to demonstrate his fitness to practice law before reinstatement pursuant to D.C. Bar R. XI, § 16(d). Such time period shall not begin to run until he satisfies all the requirements of D.C. Bar R. XI, § 14, with the existing interim order of suspension to remain in effect until that time.

▆▆▆▆

---

12. This remains true even if Zdravkovich is summarily reinstated in Maryland.

13. Such notice, and the consequences of noncompliance, were contained in our order imposing "interim" suspension, in correspondence from the Executive Secretary, in Bar Counsel's Brief to the Board, and finally in her brief to us. Indeed, to the date of this opinion, to the best of our knowledge, no such affidavit has been filed.

14. Moreover, we have noted that delay, without more, will not warrant dismissal of formal disciplinary charges against an attorney. *See In re Williams,* 513 A.2d 793, 796–97 (D.C. 1986).