*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 14-BG-455

IN RE CHESTER W. NOSAL, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 167668)
(BDN 57-14)

(Submitted December 4, 2014                    Decided April 2, 2015)

*David U. Fierst* was on the brief for respondent.

*Wallace E. Shipp, Jr.*, Bar Counsel, and *William R. Ross*, Assistant Bar Counsel, were on the brief for the Office of Bar Counsel.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and FERREN, *Senior Judge*.

PER CURIAM:  By order of the Supreme Court of Illinois, respondent Chester Nosal was suspended from the practice of law for two years and until further order of the court for numerous acts of professional misconduct.  Upon notice of respondent's suspension, this court notified and temporarily suspended respondent from the practice of law in the District of Columbia, pending proceedings to determine whether to impose reciprocal discipline, with instructions for respondent

to show cause for why we should not do so, pursuant to D.C. Bar R. XI, § 11 (d). Respondent requests a *de novo* evidentiary hearing to demonstrate that the Illinois suspension was not supported by the evidence. Bar Counsel recommends identical reciprocal discipline of two years suspension with a fitness requirement. Because "reciprocal discipline proceedings are not a forum to reargue the foreign discipline," *In re Zdravkovich*, 831 A.2d 964, 969 (D.C. 2003), we adopt Bar Counsel's recommendation.

Respondent's violations of the Illinois Rules of Professional Conduct ("Illinois Rules") stem from his involvement with Capacitive Deionization Technology Systems, Inc. ("CDT"), a Texas company. The Illinois Attorney Registration and Disciplinary Commission ("Commission") found that an attorney-client relationship existed between respondent and CDT from 1999 through 2007, and that during this time respondent engaged in various acts of self-dealing without disclosing conflicts of interest or obtaining informed consent, including acting as a lender for multiple high-interest loans and converting notes given in lieu of outstanding attorney fees to stock in CDT. Ultimately, respondent's transactions gave him an ownership interest in CDT between eleven and fifteen percent. Additionally, the Commission found that respondent made false statements to the United States District Court for the Northern District of Texas and to the

Commission regarding the time period in which he represented CDT. Finally, the Commission found that respondent knowingly failed to cooperate with its investigation and ignored a subpoena requiring respondent to appear before it. In reaching its decision to suspend respondent, the Commission considered documentary evidence of respondent's agreements with CDT, testimony from a CDT board member and its CEO, and respondent's filing characterized as a "Motion to Strike and Dismiss," in which he contested the facts at issue.

Respondent declined to participate in the Illinois proceedings, either in person or through counsel. Instead, respondent repeatedly contested the Commission's jurisdiction through various filings, announcing that he "never agreed to perpetual subjugation to the jurisdiction of the Illinois Supreme Court nor the bloated Commission" and "will not be participating in the Commission's proceedings" and "will not file a brief," and the Commission repeatedly informed respondent that its jurisdiction was proper. As the proceedings commenced in his absence, respondent threatened to take action against the Commission in federal court and filed a "Notice to Cease and Desist," but did not prevent the Commission from holding a hearing and issuing its final report recommending respondent's suspension. Respondent now requests an evidentiary hearing in the District of Columbia, contending that reciprocal discipline would be unfair because the

Commission's decision was based on a one-sided record, due to respondent's absence from the proceedings. Respondent contends that he was absent because he reasonably believed, in good faith, that the Commission had no jurisdiction over him, as he had not practiced in Illinois for several decades, had retired from the Illinois bar,[1] and the conduct at issue had no connection with Illinois.

We have adopted a "rigid standard" in reciprocal discipline cases, "presumptively impos[ing] identical reciprocal discipline, unless the attorney demonstrates by clear and convincing evidence that the case falls within one of five specified exceptions articulated in [D.C. Bar Rule XI, § 11 (c)]." *In re Zdravkovich, supra*, 831 A.2d at 968. These five exceptions are:

> (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

---

[1] Respondent was on "inactive" status when the investigation began and subsequently received "retirement status." The Illinois Supreme Court Rules on the Admission and Discipline of Attorneys provide multiple registration statuses, including "inactive status," Rule 756 (a)(5), and "retirement status," Rule 756 (a)(6), neither of which serves to "bar, limit, or stay any disciplinary investigations or proceedings against an attorney," Rule 756 (i), with the exception of "permanent retirement status," Rule 756 (a)(9), for which respondent was not eligible due to this pending investigation.

> (3) The imposition of the same discipline by the Court would result in grave injustice; or
>
> (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
>
> (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia. Unless there is a finding by the Court under (1), (2), or (5) of this subsection, a final determination by another disciplining court that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court.

D.C. Bar R. XI, § 11 (c). This standard "comports with constitutional due process requirements because the attorney either has had an evidentiary hearing or had the right to one." *In re Zdravkovich, supra*, 831 A.2d at 969 (citation omitted). Accordingly, "reciprocal discipline proceedings are not a forum to reargue the foreign discipline." *Id.*

Respondent has not met his burden to show that his case falls within any of these exceptions. With regard to exceptions one and two, respondent received notice and the opportunity for a full evidentiary hearing in Illinois in which he opted not to participate. Respondent's challenges to jurisdiction and subsequent filings indicate that he chose a tactic of non-participation, but this tactic did not deprive him of due process. *See* D.C. Bar R. XI, § 11 (c)(1). Even without

repeated notice from the Commission, respondent, as a member of the Illinois bar, knew or should have known that he remained subject to the Commission's jurisdiction. We note, as well, that the proper forum for an appeal of the Commission's jurisdiction is with an Illinois court. In the evidentiary hearing, the Commission considered, *inter alia,* the terms of respondent's agreements with CDT and the testimony of a board member who would have been the recipient of any disclosure from respondent in his duty to seek informed consent. There is no basis for us to conclude that the Commission rendered its decision on inadequate proof, such that the presumption in favor of identical reciprocal discipline in this jurisdiction has been rebutted. *See* D.C. Bar R. XI, § 11 (c)(2). We will not now hold a *de novo* evidentiary hearing after respondent deliberately waived his right to participate in the Illinois hearing. *See In re Steele*, 914 A.2d 679, 681 (D.C. 2007) (treating as waived additional arguments against a Florida Bar Counsel proceeding that respondent declined to attend); *see also In re Zdravkovich, supra*, 831 A.2d at 969 ("Underlying our strict standard in reciprocal bar discipline cases is not only the notion that another jurisdiction has already afforded the attorney a full disciplinary proceeding, but also the idea that there is merit in according deference, for its own sake, to the actions of other jurisdictions with respect to the attorneys over whom we share supervisory authority.").

With regard to the remaining exceptions, respondent argues that imposing reciprocal discipline would be "unduly harsh," as the District of Columbia would not have imposed a two year suspension with reinstatement dependent on an order of the court.  In support, respondent essentially argues that the District of Columbia Rules of Professional Conduct ("D.C. Rules") proscribe different conduct than the Illinois Rules and that, unlike prior cases where this court has imposed such a suspension, he did not benefit from the transaction at issue.  *See, e.g.*, *In re McLain*, 671 A.2d 951 (D.C. 1996) (suspending an attorney who did not repay funds borrowed from a client and who lived rent-free in a client's home).  We do not agree.  Respondent's violations of the Illinois Rules correlate to violations of the D.C. Rules.[2]  Respondent's attempt to distinguish his conduct by the absence of

---

[2]  Respondent's primary challenge in this regard concerns the Commission's determination that he violated Illinois Rule 1.8 (a) regarding conflicts of interest. Respondent contends that the commission found a violation because "CDT had no independent advice," which would not be a violation in the District of Columbia, where the client must simply have "a reasonable opportunity to seek independent counsel."  Respondent is incorrect.  The Illinois and District of Columbia rules regarding conflicts of interest are virtually the same.  Illinois Rule 1.8 (a) provides:

> Unless the client has consented after disclosure, a lawyer shall not enter into a business transaction with the client if:  (1) the lawyer knows or reasonably should know that the lawyer and the client have or may have conflicting interests therein; or (2) the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client.

(continued…)

any actual benefit to him ignores the evidence in the record on which the Commission relied: that he charged CDT a high rate of interest and had acquired an ownership interest in CDT of between eleven and fifteen percent without disclosure or informed consent. That respondent had not yet received this benefit was of no consequence; rather, the Commission noted that "the attorney need only stand to benefit." Relying on the principles of collateral estoppel, which we have repeatedly held applicable in reciprocal discipline cases, we accept this ruling. *In re Shearin*, 764 A.2d 774, 777 (D.C. 2000) (citation omitted) ("Under principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction."); *accord In re Zdravkovich, supra*, 831 A.2d at 969.

---

(…continued)
Similarly, D.C. Rule of Professional Conduct 1.8 (a) provides:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless: (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) The client gives informed consent in writing thereto.

Further, the Commission treated respondent's failure to cooperate or participate as an aggravating factor in its decision because it demonstrated "a conscious disregard for his professional obligations." In the District of Columbia, failure to cooperate with the disciplinary process could, in itself, result in the imposition of a fitness requirement, which is our functional equivalent to subjecting reinstatement to further order of the court. *See In re Ras*, 884 A.2d 44, 46 (D.C. 2005) (equating Illinois's "reinstatement subject to further order of the court" to the District of Columbia's "fitness requirement"); *In re Lea*, 969 A.2d 881, 891 (D.C. 2009) (citations and internal quotation marks omitted) (noting that evidence of "deliberate disregard for the disciplinary process" is a factor in imposing a fitness requirement, and that such disregard may, in itself, "raise[] a serious question about the attorney's continuing capacity and willingness to fulfill his or her professional obligations").

Respondent has not rebutted by clear and convincing evidence the presumption in favor of imposing identical reciprocal discipline. *See* D.C. Bar R. XI, § 11 (c); *In re Zdravkovich, supra*, 831 A.2d at 968. Accordingly, it is

ORDERED that Chester Nosal is suspended from the practice of law in the District of Columbia for two years, with reinstatement conditioned upon proof of

fitness, pursuant to D.C. Bar R. XI, §§ 16 and 3 (a)(2). We direct respondent's attention to the requirements of D.C. Bar R. XI, § 16 (c) and their effect on his eligibility for reinstatement, and note his timely compliance with the requirements of § 14 (g).

*So ordered.*