PER CURIAM.
11 Pursuant to, Supreme Court Rule XIX, §, 21, the Office of Disciplinary Counsel (“ODC”). has filed a .petition seeking the imposition of reciprocal discipline against respondent, Douglas M. Schmidt, an attorney licensed to practice law in Louisiana .and South Carolina, based upon discipline imposed by the Supreme Court of South Carolina.[1]
UNDERLYING FACTS AND PROCEDURAL . HISTORY
• In January 2005, a train derailed in Graniteville, South Carolina, resulting in the release of chlorine gas from a damaged *602 tanker car. At the time of the derailment, respondent was licensed to practice law in Louisiana and South Carolina, with his pi’incipal office in New Orleans. Shortly after.the derailment, respondent opened an office in Graniteville for the purpose of representing clients in claims related to chlorine exposure.
More than one hundred of the clients respondent represented had signed releases in exchange for payment from the railroad prior to respondent’s representation. Respondent filed suit against the railroad on behalf of these clients but did not advise them that under South Carolina law, a plaintiff who attempts to |2set aside a release must return the settlement proceeds to the defendant prior to filing suit. Respondent admits he knew about the releases and should have known about the law regarding repayment; therefore, he should have advised his clients of the law even if he believed there was a legal argument to be made against the tender requirement.
As a result of the failure to tender, the railroad filed a motion for summary judgment. Respondent asserted that case law supported his position that his clients were not required to tender the settlement proceeds prior to filing suit; however, shortly thereafter, he sent letters to his clients informing them that within four days they must return the money paid to them by the railroad four years earlier or their lawsuit would be dismissed.[2] Respondent assured the clients they would not lose their money and that even if the money were returned to the railroad and the court ruled against the clients, they would get their money back. He also informed the clients that repayment of the funds was necessary in order to negotiate a larger settlement. However, respondent was aware that the railroad was not negotiating settlements for these clients and that it considered their claims settled and released. Ultimately, the court upheld the validity of the releases and dismissed the lawsuits on several grounds, including the failure of the clients to tender the funds.
Some of respondent’s clients informed the local media of respondent’s letter requesting return of the settlement funds. In an interview with a reporter, respondent commented on his clients’ ability to return the funds and on the merits of his claim that the releases were signed under duress, and he admitted failure to return the money would result in dismissal of the claims. Respondent also stated that the railroad was asking for the return of the money and that his clients would |sbe able to negotiate higher settlements or seek additional damages if the funds were returned. These statements were not true. The railroad did not ask for a return of the funds and had asked the court to dismiss the lawsuit because the clients had released their claims. Further, the railroad was not negotiating settlements for these clients and considered the claims settled and released.
Following the media reports, the railroad sought a gag order. The trial court found respondent’s statements to the media were inaccurate and misleading, and clearly violated Rule 3.6 of the Rules of Professional Conduct (trial publicity) and Rule 407 of the South Carolina Appellate Court Rules. Respondent was ordered to pay the railroad’s fees and costs and to *603 refrain from further public comment on the matter. Respondent appealed, but after his clients’ cases were dismissed, the parties stipulated to a dismissal of the appeal and vacation of the gag order and sanction.
Respondent and the South Carolina Office of Disciplinary Counsel subsequently entered into an Agreement for Discipline by Consent. Pursuant to the Agreement, respondent admitted that his misconduct as set forth above violated the following provisions of the South Carolina Rules of Professional Conduct: Rule 1.1 (lawyer shall provide competent representation to client), 1.2 (lawyer shall abide by client’s decisions concerning objectives of representation and shall consult with client as to means by which they are to be pursued), and 3.6 (lawyer participating in litigation shall not make extrajudicial statement lawyer knows or reasonably should know will be disseminated by means of public communication and will have substantial likelihood of materially prejudicing adjudicative proceeding in matter). Respondent also admitted that he violated Rules 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct) and 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute administration of justice, tending to bring courts or legal ^profession into disrepute and demonstrating unfitness to practice law) of the South Carolina Rules for Lawyer Disciplinary Enforcement. Further pursuant to the Agreement for Discipline by Consent, respondent consented to the imposition of a public reprimand. On October 14, 2015, the Supreme Court of South Carolina accepted the Agreement for Discipline by Consent and issued a public reprimand.
After receiving notice of the South Carolina order of discipline, the ODC filed a motion to initiate reciprocal discipline proceedings in Louisiana, pursuant to Supreme Court Rule XIX, § 21. A certified copy of the decision and order of the Supreme Court of South Carolina was attached to the motion. On March 31, 2016, we rendered an order giving respondent thirty days to demonstrate why the imposition of identical discipline in this state would be unwarranted. Respondent timely filed an opposition with this court in which he asserted that reciprocal discipline should not be imposed against him, primarily because Louisiana law does not require a person contesting the validity of a release to return the settlement proceeds to the released party before filing suit, “and therefore, the controversy and/or underlying facts that led to the imposition of discipline would not have occurred” in this state.,
DISCUSSION
The standard for imposition of discipline on a reciprocal basis is set forth in Supreme Court Rule XIX, § 21(D). That rule provides:
Discipline to be Imposed. Upon the expiration of thirty days from service of the notice pursuant to the provisions of paragraph B, this court shall impose the identical discipline ... unless disciplinary counsel or the lawyer demonstrates, or this court finds that it clearly appears upon the face of the record from which the discipline is predicated, that:
(1) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
|fi(2) Based on the record created by the jurisdiction that imposed the discipline, there was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the court could not, consistent with its duty, accept as ' final the conclusion on that subject; or
*604 (3) The imposition of the same discipline by the court would result in grave injustice or be offensive to the public policy of the jurisdiction; or
(4) The misconduct established warrants -substantially different discipline in this state; ,.
If this court determines that any of those elements exists, this court shall enter such other order as it deems appropriate. The burden is on the party seeking different discipline in this jurisdiction to demonstrate that the imposition of the same discipline' is not appropriate. '
In the instant case, respondent has made no showing of infirmities in the South Carolina proceeding, nor do we discern any from our review of the record. Furthermore, there is no reason to deviate from the sanction imposed in South Carolina as only under extraordinary circumstances should there be a significant variance from the sanction imposed by the other jurisdiction. In re: Aulston, 05-1546 (La.1/13/06), 918 So.2d 461. See also In re Zdravkovich, 831 A.2d 964, 968-69 (D.C.2003) (“there is merit in according deference, for its own sake, to the actions of other jurisdictions with respect to the attorneys over whom we share supervisory authority”).
Under these circumstances, we find it appropriate to defer to the South Carolina judgment imposing discipline upon respondent. Accordingly, we will impose the same discipline’against respondent as was imposed in South Carolina.
DECREE
Considering the Petition to Initiate Reciprocal Discipline Proceedings filed by the Office of Disciplinary Counsel and the record filed herein, it is ordered that respondent, Douglas M.. Schmidt, Louisiana Bar Roll number 11789, be publicly reprimanded.

. Respondent has been the subject of a prior reciprocal discipline proceeding involving violations of the Rules of Professional Conduct governing lawyer advertising. On March 7, 2008, we publicly reprimanded respondent based upon discipline imposed by the Supreme Court of South Carolina. In re: Schmidt, 07-1996 (La.3/7/08), 976 So.2d 1267.

. Even if respondent was not aware of the tender requirement when he filed suit, he was on notice of it when the railroad raised the issue in its answer and during discovery many months before the motion for summary judgment was filed. In addition, if respondent was correct that tender was not required under the law, then his statements to his clients that the claims would be dismissed if they did not tender the money would have been incorrect.