**In re Robert B. WILKINS, Jr., Appellant.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 91–BG–204.**

District of Columbia Court of Appeals.

Submitted Sept. 27, 1994.
Decided Nov. 3, 1994.

Before WAGNER, Chief Judge, and FERREN and STEADMAN, Associate Judges.

PER CURIAM:

In this disciplinary proceeding, the Board on Professional Responsibility found that respondent, Robert B. Wilkins, Jr., had engaged in conduct which violated two disciplinary rules, DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit and/or misrepresentation) and DR 1–102(A)(5) (conduct prejudicial to the administration of justice). Another issue before the Board was whether respondent's conduct, which resulted in his conviction of the misdemeanor offense of obstructing justice (Va.Code § 18.2–460) in the Commonwealth of Virginia, involved moral turpitude. The Board agreed with the Hearing Committee which determined that the offense did not involve moral turpitude in light of the facts established by the evidence. Neither respondent nor Bar Counsel filed exceptions to the Report and Recommendation of the Board on Professional Responsibility. Substantially for the reasons set forth in the Board's report, we adopt its recommendation. Its report is reproduced at the end of this opinion.

Accordingly, it is hereby ordered that respondent, Robert B. Wilkins, Jr., be suspended from the practice of law in the District of Columbia for a period of six months, *nunc pro tunc,* to the date on which he filed an affidavit in compliance with D.C. Bar Rule XI, § 14(f).[1]

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS

### BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of: ROBERT B. WILKINS, Respondent.

Bar Docket No. 468–90

### *REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This matter is before the Board for consideration of the report issued by Hearing Committee No. 7, dated August 7, 1993. The major issue presented is whether the actions surrounding a criminal offense for which Respondent was convicted in the state courts of Virginia involved "moral turpitude," as that term is used in DR 1–102(A)(3) and D.C.Code § 11–2503(a). The Hearing Committee did not find moral turpitude, but found other violations of the disciplinary rules. The Committee recommended a six-month suspension.

Bar Counsel takes exception to the Hearing Committee's findings and conclusions, and urges: (1) that we find that Respondent's actions did involve moral turpitude; and (2) that, even if we do not find moral turpitude, we should recommend to the Court a one-year suspension and require a showing of fitness for readmission for the other violations found. Respondent urges that we impose "at most a disciplinary reprimand in this case." The Board follows the recommendation of the Hearing Committee.

### *Pertinent Facts*

This proceeding started in January, 1990, when Respondent, a member of the District of Columbia Bar, was given a speeding ticket by Fairfax County police. Respondent did not pay the ticket; instead, he tried to "beat" the ticket by stating or implying at a March, 1990, hearing in traffic court that his excessive speed was justified by "undercover work" he was then doing for the U.S. Customs Service. Respondent had previously worked for that agency, and he had with him at the hearing some outdated identification documents issued by that agency.

Although there is considerable dispute as to precisely what Respondent said in traffic court about why he was speeding, as well as to whom and when he said it, this much is clear: (a) Respondent was successful in having the Court dismiss the speeding charge; (b) an investigation was then undertaken by

---

1. Respondent has been on suspension since May 1991 pursuant to an order entered by this court following notification of his conviction in Virginia.

the Virginia police, which resulted in Respondent being charged with perjury, and (c) on August 14, 1990, to avoid trial on the perjury charges, Respondent pleaded guilty to a misdemeanor violation of Section 18.2–460 of the Virginia Code—Obstructing Justice By Threats or Force.[1]

For this offense, Respondent was given a 180–day suspended sentence and fined $1,000.00. He was also required to surrender any Government credentials in his possession and to consent to the vacation of his prior acquittal on the speeding charge.

When the certified record of the conviction reached the D.C. Court of Appeals, an order was entered in this jurisdiction suspending Respondent from the practice of law pending final disposition of the matter by our disciplinary system. This interim suspension has been in effect since May, 1991, and remains in effect today. When it suspended Respondent, the Court of Appeals also ordered this Board to institute a formal proceeding "for determination of the final discipline to be imposed, and specifically to review the elements of the crime ... for the purpose of determining whether or not the crime involves moral turpitude within the meaning of D.C.Code § 11–2053(a) [§ 11–2503(a) ]."

In December, 1991, this Board determined that the Virginia offense for which Respondent had been convicted did not involve moral turpitude *per se*. We therefore referred the matter to the Hearing Committee "to explore the underlying factual circumstances of the conviction, to determine whether, in light of the facts, the crime committed by Respondent is a crime of moral turpitude and to recommend what the final discipline should be." The Board at the same time authorized Bar Counsel to charge offenses under any disciplinary rules that might have been violated.

Bar Counsel charged Respondent with violating the following provisions of the Code of Professional Responsibility, which were the regulations in effect at the relevant time:

(a) DR 1–102(A)(3), in that Respondent engaged in illegal conduct involving moral turpitude that adversely reflects upon his fitness to practice law;

(b) DR 1–102(A)(4), in that Respondent engaged in conduct involving dishonesty, fraud, deceit and/or misrepresentation; and

(c) DR 1–102(A)(5), "in that respondent engaged in conduct prejudical [sic] to the administration of justice." (Bar Ex. B at 3)

Following the taking of evidence over a two-day span, the Hearing Committee concluded that Bar Counsel had not established by clear and convincing evidence that Respondent had engaged in illegal action involving moral turpitude. But the Committee did find that Bar Counsel had established by clear and convincing evidence that Respondent violated DR 1–102(A)(4) and DR 1–102(A)(5). As indicated earlier, the Hearing Committee recommended that Respondent be suspended from the practice of law for a period of six months, which suspension was to date back to his temporary suspension by the Court of Appeals. (May, 1991). Thus, if our recommendation is followed by the Court, Respondent will be automatically restored to active Bar status.

### Findings of Fact

■ The Board is fortunate in this case to have the benefit of a very detailed and painstakingly drafted Hearing Committee Report that summarizes the relevant evidence with great precision. The Committee made extensive findings based on evaluation of the demeanor and credibility of the witnesses and our review reveals these findings to be consistent with the evidence of record. We adopt the Committee's findings as our own, incorporating the Hearing Committee report to this extent by reference.

---

1. *Article 6. Interference with Administration of Justice—18.2–460 Obstructing justice by threats or force—A.* If any person without just cause, knowingly obstructs a judge, magistrate, justice, juror, witness or any law enforcement officer in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such judge, magistrate, justice, juror, witness or law enforcement officer, he shall be guilty of a Class 3 misdemeanor.

Thus, we find as follows: (1) that Bar Counsel has failed to prove, by clear and convincing evidence, that Respondent knowingly and intentionally lied to the Virginia Court on March, 1990, during the hearing on his traffic ticket; (2) that, in the absence of a transcript or tape recording of precisely what Respondent said at that hearing, and in the absence of testimony from the presiding judge on this point, we are unable to find that Respondent intentionally lied under oath; (3) that it remains unclear whether Respondent was under oath in Virginia when he testified concerning his traffic offense; (4) that there is a lack of clear and convincing evidence that Respondent, at the traffic court hearing, acted with the specific intent to defraud the Court by his statements made that day; (5) that, notwithstanding the lack of sufficient proof of perjury or its equivalent, there is sufficient evidence that Respondent engaged in "misrepresentation" and "dishonesty," as those terms are used in DR 1–102(A)(4); and (6) that Respondent's course of conduct at the March, 1990, traffic hearing did interfere with the administration of justice and obstructed justice—consistent with Respondent's voluntary guilty plea.

■ In the face of these findings, which we are constrained to accept, we must conclude, as did the Hearing Committee, that there was not a showing by clear and convincing evidence that Respondent's illegal conduct involved moral turpitude that adversely reflects on his fitness to practice law.[2]

The Hearing Committee Report is somewhat complicated in that, while it did not find specific fraudulent intent that reached the level of moral turpitude, the Hearing Committee did find, when it considered "the entire course of respondent's conduct," that he had engaged in "misrepresentation" and "dishonesty." Thus, the Committee found that Respondent had made implied representa-

tions to the traffic judge that were either false or capable of misleading the court, and that such misrepresentations, even if not done with an intention to defraud the Court, were "at least an action done in reckless disregard of [their] capacity to mislead." (H.C.Rept. 23–24)

■ A finding of "recklessness" may satisfy the requirement of intent needed to justify finding a dishonesty violation under DR 1–102(A)(4) (*See In re Rosen,* 570 A.2d 728 (D.C.1989) (*"Rosen II"*)). But this does not mean that recklessness can stand in for the specific intent required to find moral turpitude under DR 1–102(A)(3) or under D.C.Code § 11–2503(a).

When we referred this case to the Hearing Committee, the Board pointed out that the Court has recognized "that even conduct that is extremely serious and comes 'close to demonstrating moral turpitude' may not quite meet the test for moral turpitude *per se.*" As we also pointed out then, the offense for which Respondent was convicted requires "no more than knowledge or a general intent to engage in certain conduct (rather than a specific intent to obstruct justice). . . ." *(Id.* at 5–6) Thus, the Hearing Committee was justified in now ruling that—in the absence of evidence from which a finding as to Respondent's specific intention can be made with the requisite degree of conviction—it could not determine that Respondent's actions were "suffused with the intention necessary to characterize [such actions] as involving 'moral turpitude.'"

In this regard, we must recall that an attorney may be found to have violated DR 1–102(A)(4) by engaging in "dishonesty" without necessarily being guilty of conduct involving "moral turpitude." *See In re Shorter,* 570 A.2d 760, 766–67 (D.C.1990). The Court's ruling in *Shorter* appears dispositive here:

> Respondent had *not* committed a crime involving moral turpitude. It was Bar Counsel who bore the burden of proof. The Hearing Committee did, however, expressly find that the record did not contain the requisite clear and convincing evidence.

---

**2.** Bar Counsel concedes that the Board must give deference to properly supported findings made by the committee (Bar Counsel's Exceptions, p. 4.), but states that such deference is not warranted by findings "not made." But the committee did make findings on all pertinent points. The Hearing Committee was not required to find that

In pertinent part, DR 1–102(A)(4) provides that "[a] lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Although it found no deceit for purposes of assigning moral turpitude to respondent's conduct, the Hearing Committee recommended sanctioning respondent under DR 1–102(A)(4). We agree that respondent violated this provision and predicate our invocation of sanctions, in part, on this violation.

Any facial inconsistency between our holding as to moral turpitude and as to the applicability of DR 1–102(A)(4) dissipates under close scrutiny. Notably, the conduct prohibited by DR 1–102(A)(4) may fall into one of four separate categories disjunctively stated: "dishonesty, fraud, deceit, or misrepresentation." We agree with the Hearing Committee and the Board that these four terms should be understood as separate categories, denoting differences in meaning or degree. Thus, to the extent possible, each term should be read narrowly, so as not to engulf any of the remaining three. Moreover, if any term proves more general than the others, or encompasses another, only the more general term need be applied; we will find only one violation of the disciplinary rule upon a single set of facts.

The most general term in DR 1–102(A)(4) is "dishonesty," which encompasses fraudulent, deceitful, or misrepresentative behavior. In addition to these, however, it encompasses conduct evincing "a lack of honesty, probity or integrity in principle; [a] lack of fairness and straightforwardness...." *Tucker v. Lower*, 200 Kan. 1, 4, 434 P.2d 320, 324 (1967). Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty.

Given the "technically true" nature of respondent's answers to questions posed by revenue agents, and his abstinence from actual false statements or affirmative acts of concealment, we decline to describe his financial arrangements and his parsimonious dissemination of information as either fraudulent, deceitful, or misrepresentative, which all describe degrees or kinds of active deception or positive falsehood. *See supra* note 12. We

deem this issue a close one, however, and thus experience no difficulty in characterizing these arrangements as evincing a lack of integrity and straightforwardness, and therefore dishonest. By his own acknowledgment respondent knew what information the IRS was after, but for his own benefit refrained from supplying that information even when asked questions that grazed the truth. As long as the IRS did not ask just the right questions, respondent was prepared to deprive it of the right answers. This conduct was of a dishonest character, and thus violated DR 1–102(A)(4). [Footnotes omitted.] [3]

*Sanction*

On the issue of sanction, the Hearing Committee recommended a six-month suspension, *nunc pro tunc,* to May, 1991, which is when Respondent was temporarily suspended by the Court of Appeals. The Hearing Committee did not recommend a requirement of a showing of fitness—which had been urged by Bar Counsel. We agree with the sanction recommendation of the Hearing Committee.

In reaching its recommendation, the Hearing Committee reviewed numerous Court of Appeals precedents involving violations of DR 1–102(A)(4) and DR 1–102(A)(5), where dishonesty, misrepresentation, and conduct prejudicial to the administration of justice

3. We also agree with the Hearing Committee's rulings respecting the admissibility of the affidavits of Judge Kimble, who had presided at Respondent's traffic hearing. The fact that Virginia has a specific statute (Section 19.2–271 of the Virginia Code) providing that "[n]o judge shall be competent to testify in any criminal or civil proceeding as to any matter which came before [her] in the course of [her] official duties," distinguishes this rejected evidence from the affidavit

erroneously rejected in *Shillaire,* 549 A.2d 336 (D.C.1988). It seems to us beyond question that if the statute renders Judge Kimble not competent to testify *in person,* she is certainly not competent to testify by affidavit. We also agree with the propriety of Hearing Committee's exercise of discretion to reject Bar Counsel Exhibit 13, the statement of prosecutor Wright, for lack of evidentiary foundation—even as past recollection recorded. Cf. Fed.R.Evid. 803(5).

were factors. The sanctions in those cases ranged from a 30–day suspension in *In re Rosen,* 481 A.2d 451 (D.C.1984) ("*Rosen I*") for three misrepresentations to a Court; to a 60–day suspension in *In re Waller,* 573 A.2d 780 (D.C.1990), where there was a misrepresentation to the Court to avoid disqualification for conflict of interest; to the one-year suspension in *In re Hutchinson,* 534 A.2d 919 (D.C.1987) (*en banc*), for false sworn testimony to a government agency regarding his role in certain "insider" stock purchases.

After noting the range of sanctions imposed in the long list of cases reviewed, the Hearing Committee concluded that "it is difficult to discern a pattern that provides clear guidance." (H.C.Rept. p. 33) We think the Hearing Committee's settling on six months as the proper sanction for the improper actions here is fair and consistent with precedent, especially given the mitigating factors it identified:

> On the other hand, respondent has no prior record of criminal behavior or Bar discipline. See *In re Reback, supra,* 513 A.2d [226] at 233. His misconduct was unrelated to the practice of law. He was appearing *pro se* before the Fairfax County District Court, and we view his role as more that of client than representative of a client. Moreover, it is a misnomer to label him, as Bar Counsel does, "an officer of the court" for this purpose, at least in the absence of any evidence that he was a member of the Virginia Bar or was admitted to the bar of the Virginia court for purposes of the proceeding. (H.C.Rept., p. 36)

Because Respondent has been on suspension since May, 1991—a period of more than two years—it really makes no practical difference whether a one-year *nunc pro tunc* suspension is imposed or a six-month *nunc pro tunc* suspension is imposed (other than to establish Board precedent in a case not likely to recur). A more pressing issue, it seems, is whether there should be a required showing of fitness for reinstatement. We find this to be a "close call."

On the one hand, the actions engaged in by Respondent—even if his version of the events is believed—seem so foolhardy (if not bizarre) as to raise a serious question as to Respondent's judgment, aside from his honesty. On the other hand, the actions seem so out of character from what one would expect from an attorney that the episode may be an aberrational act that will never be repeated. Because the Hearing Committee had the best opportunity to observe Respondent's demeanor, we are inclined to follow the Committee's recommendation omitting the requirement of a showing of fitness.

Respondent's effort to beat a traffic ticket led him into a perjury indictment, an obstruction of justice conviction, and a three-year bout with our disciplinary system. Indeed, his ability to practice law still remains in doubt. He received a suspended sentence of 180 days, paid or still owes a $1,000 fine, and ended up having to pay the speeding ticket as well.

Respondent's disciplinary violations are most serious, but he has already paid a heavy price. Under these circumstances, we agree with the Hearing Committee that a six-month suspension, unaugmented by a fitness requirement, "strikes a proper balance between the 'need to protect the public, Courts, and legal profession' ... and the interests of Respondent."

### Conclusion

Based on the foregoing, we recommend to the Court that Respondent be suspended for a six-month period, *nunc pro tunc,* to May, 1991, for violation of DR 1–102(A)(4) and DR 1–102(A)(5).

BOARD ON PROFESSIONAL RESPONSIBILITY

Dated: January 13, 1994

By ————————————

Charles R. Donnenfeld, Chair

All members join in this report, except Mr. Cohen and Mr. Hart, who did not participate. Mr. McKay is recused.