**In re Michael H. DITTON, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 436463).**

**No. 06–BG–44.**

District of Columbia Court of Appeals.

Submitted Dec. 7, 2007.

Decided Aug. 14, 2008.

Michael H. Ditton filed a brief pro se.

Wallace E. Shipp, Jr., Bar Counsel, Judith Hetherton, Senior Assistant Bar Counsel, and Julia L. Porter, Senior Assistant Bar Counsel, filed a brief for the Office of Bar Counsel.

Before FISHER and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

FISHER, Associate Judge:

This is a hybrid attorney discipline case. Based on proceedings conducted in Virginia, the Board on Professional Responsibility ("Board") recommends that we impose on respondent Michael H. Ditton reciprocal discipline in the form of a five-year suspension from the practice of law. In addition, however, the Board recommends "imposition of a fitness requirement ... based on the standard applied in original proceedings." We neither accept nor reject the Board's recommendations at this time, but remand for further inquiry.

## I. Procedural Background

Respondent Michael Ditton is a member of the District of Columbia and Virginia bars, but this disciplinary saga began when he applied for admission to the State Bar of Montana in the year 2000. The Commission on Character and Fitness denied his application, concluding, as the Su-

preme Court of Montana later summarized, that "Ditton's behavior as shown in the record constituted evidence of abuse of legal process, neglect of financial responsibilities, and current mental or emotional illness or disorder." The Supreme Court of Montana affirmed the decision to deny admission to the bar of that state.

In August 2001, after being advised that the Supreme Court of Montana had denied respondent admission, the Virginia State Bar initiated disciplinary proceedings based on the conduct described in the Montana rulings. In August 2004, respondent was present and testified at an evidentiary hearing before a three-judge panel of the Circuit Court for the City of Alexandria on a Rule to Show Cause why his law license should not be suspended or revoked. The court found, by clear and convincing evidence, that respondent had violated DR 1–102 (Misconduct); DR 7–102 (Representing a Client Within the Bounds of the Law); Rule 3.3 (Candor Toward The Tribunal); and Rule 8.4 (Misconduct) of the Virginia Code of Professional Responsibility and Rules of Professional Conduct.[1] The court suspended respondent's license to practice law in the Commonwealth of Virginia for five years.

On appeal, the Supreme Court of Virginia affirmed the Circuit Court's order. Respondent presented fourteen assignments of error, but the court declined to evaluate ten of the issues because respondent did not timely file the transcript from the Circuit Court proceeding. With respect to the remaining issues, the court noted that it was guided by certain principles: "We view the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the Virginia State Bar, the prevailing party in the circuit court." Moreover, the court "conduct[s] an independent examination of the whole record and view[s] the three-judge court's factual findings as *prima facie* correct." Having applied these principles during its independent review of the record, the court found no merit in the remaining assignments of error. Although the five-year suspension had been stayed pending Supreme Court review, the Circuit Court reinstated the suspension on December 2, 2005.

Bar Counsel in the District of Columbia deferred his own inquiry until the proceedings in Virginia were completed. He then initiated this reciprocal disciplinary proceeding. On February 27, 2006, we suspended respondent from the practice of law in the District of Columbia pending final disposition of this matter. *See* D.C. Bar R. XI, § 11(d). The Board's Report and Recommendation and the briefs of the parties are now before us.

## II. Standard of Review

D.C. Bar Rule XI, § 11(c)[2] "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992). Moreover, "reciprocal discipline proceedings are not a forum to reargue the foreign discipline." *In re Zdravkovich*, 831 A.2d 964, 969 (D.C. 2003). Where the Board recommends reciprocal discipline, D.C. Bar Rule XI, § 11(f)(2) requires that identical discipline be imposed unless the attorney demon-

---

1. Effective January 1, 2000, the Virginia Rules of Professional Conduct superseded the Virginia Code of Professional Responsibility. The Circuit Court applied the rules in effect at the time of each instance of misconduct.

2. D.C. Bar Rule XI was amended pursuant to our Order No. M–230–07 (effective August 1, 2008). We consider respondent's claim under the version of the Rule in effect at the time of the proceedings before the Board.

strates, or the court finds on the face of the record, by clear and convincing evidence, one of the five exceptions set forth in D.C. Bar Rule XI, § 11(c).[3] *See also In re Goldsborough,* 654 A.2d 1285, 1287 (D.C. 1995) (citing *In re Zilberberg,* 612 A.2d at 834).

■■ Bar Counsel and the Board may rely upon the "substantially different discipline" exception, D.C. Bar Rule XI, § 11(c)(4), when arguing for or recommending a greater sanction. *In re Jacoby,* 945 A.2d 1193, 1198 (D.C.2008); *In re Drury,* 638 A.2d 60, 62 n. 6 (D.C.1994). However, "in a reciprocal proceeding, when a greater sanction is sought in the District of Columbia, the record must affirmatively show that a greater sanction is warranted...." *Zilberberg,* 612 A.2d at 835. "If the existing record from the original disciplining jurisdiction is insufficient for that purpose, then the record must be augmented before a greater sanction may be imposed. The usual means of augmentation will probably be, we expect, a *de novo* hearing before a hearing committee. *See* D.C. Bar Rule XI, § 11(g)(2)." *Id.* In addition, if we determine that identical discipline should not be imposed, we may enter an "appropriate" order, which may include "referral of the matter to the Board for its further consideration and recommendation." D.C. Bar R. XI, § 11(f)(2); *see In re Maxwell,* 798 A.2d 525, 531 (D.C.2002).

## III. Analysis

### A. The Record From Virginia

We thus begin with the presumption that reciprocal discipline is appropriate and that we are bound by the findings of the Virginia Circuit Court (which were affirmed by the Supreme Court of Virginia). The Circuit Court found that respondent "has been charged in Virginia with being drunk in public, for driving while intoxicated, and for knowingly obstructing a law enforcement officer in the performance of duty." The court explained that the latter charge arose when respondent refused entry to a sheriff's deputy who was attempting to execute a Writ of Possession to evict respondent from his apartment. Respondent did so "despite warnings that his continued failure to comply with their instructions to open his door would result in an obstruction of justice charge." When respondent failed to appear on his return date for that charge, the court forfeited his bond and issued a writ of *capias*[4] for his arrest.

The court also found that respondent "has a long history of filing civil actions against numerous and various defendants on grounds that are, at best, of questionable merit," including the filing of a 336–page complaint against the law firm for which he formerly worked. In February 2000, Judge Albert V. Bryan, Jr., of the

---

**3.** Rule XI, § 11(c) provides that "[r]eciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing, evidence that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or
(4) The misconduct established warrants substantially different discipline in the District of Columbia; or
(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

**4.** "A *capias* is simply a bench warrant of arrest...." *Price v. Commonwealth,* 51 Va. App. 443, 658 S.E.2d 700, 702 (2008).

United States District Court for the Eastern District of Virginia enjoined respondent from filing any further complaints against a certain group of named defendants without first obtaining leave of court. Respondent violated this order in August 2000 by filing a 378–page complaint against thirty-seven defendants, including some covered by the injunctive order.

In the August 2000 filing, respondent named his two sons as co-plaintiffs; at that time one was a minor and the other was nineteen years old. "[B]y naming his children as co-plaintiffs, by suing as their counsel when one of the children was not in his legal custody," the court determined, respondent "made false statements to a tribunal concerning the legal status of his 'client' child." The court also found that, by "purporting to be acting as [the children's] 'attorney', the Respondent has subjected two other individuals, one of whom was a minor, to potential sanctions and/or counter-claims."

The Board also referred to two letters written by respondent after the Supreme Court of Virginia announced its decision. Although these letters did not contribute to the decision to impose discipline in Virginia, they may reflect on respondent's fitness to practice law and are a part of the record received from the Commonwealth. Respondent acknowledges that he wrote the letters, referring to them as "letters addressed to the three judges that he did not file with the court but sent by mail to their home addresses, and the letter he sent VSB Bar Counsel Williams."

In one letter, respondent wrote to counsel for the Virginia State Bar: "I refuse to participate or cooperate [in] any way in your criminal and cowardly Fascist racketeering conspiracy, otherwise known as the murder Ditton legally game. Go to hell." The other letter was addressed to the home of Judge Haley, a member of the three-judge panel of the Circuit Court. Respondent characterized the five-year suspension as "a Hitlerite decision . . . a Fascist decision. By refusing to follow the rule of law you violated your oath of office. You further lied to me when stating to me you had a conscience. You leave me with only my absolute moral superiority that I invoke against you and your co-conspirators as follows. . . ." Respondent quoted from two movies, *The Great Dictator* and *Judgment at Nuremberg,* then closed with the admonition "Go to hell." A notation at the bottom of this letter indicates that copies had been sent to the other two members of the panel.

### B. The Uncertain Impact of the Montana Proceedings

The order of the Virginia Circuit Court described the proceedings in Montana: "The Commission [on Character and Fitness] found, and the Supreme Court of Montana affirmed upon appeal, that the Respondent had displayed a long history of unlawful and criminal conduct and abuse of legal process." This recitation of procedural history by the Circuit Court is not a finding of misconduct, however. Notification of the decision in Montana may have precipitated the inquiries in Virginia and the District of Columbia, but Montana was not conducting disciplinary proceedings and, for reasons we will explain, the ruling there does not provide a basis for reciprocal discipline.

In our original discipline proceedings, misconduct must be proven by clear and convincing evidence. *See In re Anderson,* 778 A.2d 330, 335 (D.C.2001); *In re Williams,* 464 A.2d 115, 119 (D.C. 1983) ("The burden of proving the [disciplinary] charges rests with Bar Counsel and factual findings must be supported by clear and convincing evidence."). The proceedings in Montana did not involve the

imposition of discipline, however, and the burdens were reversed. The Supreme Court of Montana explained "that Ditton has failed to meet his burden of proving by clear and convincing evidence that he is fit to perform the obligations and responsibilities of an attorney, and that he is possessed of good moral character and general fitness to practice law in the State of Montana." *See* Mont. Rules of Proc. of the Comm. on Character and Fitness, § 4(a) ("Every applicant for the Montana Bar Examination shall be of good moral character and fitness. The applicant shall have the burden of proving by clear and convincing evidence that he or she is possessed of good moral character and fitness."); *Petition of Steele,* 262 Mont. 481, 865 P.2d 285, 289 (1993) ("The rules for admission to the State Bar of Montana provide that the burden of proof is on the applicant to demonstrate good moral character and general fitness to practice. . . .").

We encountered a comparable situation in *In re Maxwell,* 798 A.2d 525 (D.C.2002), where the Board recommended that we impose reciprocal discipline greater than that imposed by the Maryland Court of Appeals. Maxwell had consented to discipline in Maryland; the parties had not reached any relevant stipulations of fact, nor had the Maryland court made any such findings. *Id.* at 525–26. The underlying facts had been well-developed in a bench trial held in the Superior Court of the District of Columbia, but we concluded that we could not "accept the Board's recommendation of increased discipline because to do so would give preclusive effect to factual findings made in a non-disciplinary proceeding and present grave questions about the adequacy of the notice and opportunity to be heard that Maxwell received." *Id.* at 529. "It cannot fairly be said that in his own civil suit for declaratory relief, even coupled with a counterclaim alleging his wrongdoing as a lawyer, Maxwell was on notice that conclusions could one day be drawn—irrebuttably—from that record as to what discipline to impose for ethical breaches arising from the transaction." *Id.* at 530. Moreover, the Superior Court judge had applied a preponderance standard when making his findings. "Accepting the Board's recommendation on this record would thus come dangerously close to disciplining Maxwell for misconduct . . . on the basis of facts proven only by a preponderance of the evidence, contrary to this jurisdiction's standard in original discipline proceedings." *Id.* We therefore "return[ed] the matter to the Board for reconsideration whether to recommend identical reciprocal discipline or to direct further proceedings under D.C. Bar Rule XI, § 11(g)(2) or (3)."[5] *Id.* at 526.[6]

---

**5.** Section 11(g)(2) authorizes the Board to "refer the matter to a Hearing Committee for its recommendation as to the appropriate discipline." Under § 11(g)(3), the Board may "direct Bar Counsel to institute such proceedings as may be appropriate."

**6.** We relied on a number of factors in *Maxwell,* expressly distinguishing our decision in *In re Benjamin,* 698 A.2d 434 (D.C.1997), where we held "that New York's use of a preponderance standard [did] not establish an infirmity of proof" in a reciprocal disciplinary proceeding. *Id.* at 440. We said in *Maxwell* that the distinction was "evident: because Maryland did not find dishonesty by *any* stan-

dard, that violation has yet to be established in a disciplinary procedure that includes notice, an opportunity to be heard, and sufficient proof of the misconduct." *Maxwell,* 798 A.2d at 530–31 (emphasis in original; internal quotation marks, editing, and citation omitted). Moreover, the Superior Court's findings, under a preponderance standard, had been made in this jurisdiction in a non-disciplinary proceeding. *Id.* And, as we have already noted, here Montana was not conducting disciplinary proceedings, the burden of proof was on Ditton, and the Supreme Court of Montana did not make any findings of misconduct.

In this case, the Board relied to some extent upon the Montana proceedings when it added a recommendation that we impose a fitness requirement. It explained that "[t]he record in [the Virginia] proceeding including the rejection of admission to the Montana Bar casts doubt on Respondent's mental and emotion[al] fitness generally, and raises very real questions concerning current fitness for the practice of law." We certainly agree that the opinion of the Supreme Court of Montana raises these concerns, but, as we have seen, it does not provide a basis for imposing either reciprocal or original discipline. Perhaps the Board had access to the evidence presented in Montana, but neither it nor a Hearing Committee has made independent findings by clear and convincing evidence related to respondent's mental and emotional fitness.

## C. Should We Impose a Greater Sanction?

In this case, the Board and Bar Counsel are not seeking the imposition of identical reciprocal discipline. The Board acknowledges that the discipline it recommends—a five-year suspension with a requirement to prove fitness prior to reinstatement—has the same practical effect as disbarment.[7] Although Ditton must meet certain conditions before he may resume his practice in Virginia, those conditions are different in kind from, and far less onerous than, a fitness showing in the District. *Compare* Va. S.Ct. R. 6:4–13(I)(8)(c) *with In re Cater*, 887 A.2d 1, 6 (D.C.2005). If we add a requirement that respondent demonstrate his fitness to practice law before he may be reinstated, we will be imposing a greater sanction than was imposed in Virginia.

The " 'authority of the Board to recommend greater discipline, and of this court to impose it, is well established' " in reciprocal disciplinary proceedings. *In re Jacoby*, 945 A.2d 1193, 1197 (D.C.2008) (quoting *In re Demos*, 875 A.2d 636, 641 (D.C. 2005)). "[O]ur authority to deviate from imposing identical discipline resides in § 11(f)(2)" of D.C. Bar Rule XI. *In re Drury*, 638 A.2d 60, 62 (D.C.1994). These deviations may result in either greater or lesser sanctions than those imposed in the foreign jurisdiction. *Jacoby*, 945 A.2d at 1198 (citing *In re Coury*, 526 A.2d 25, 26 (D.C.1987)). However, as a prerequisite, the attorney or Bar Counsel must demonstrate, or this court must find on the face of the record on which discipline is based, by clear and convincing evidence, that one or more of the enumerated subsection (c) exceptions applies. D.C. Bar R. XI, § 11(f)(2); *Jacoby*, 945 A.2d at 1198; *In re Spann*, 711 A.2d 1262, 1263 (D.C.1998) ("Pursuant to [§ 11(f)(2)], the Board can recommend a different sanction where it believes an exception applies.").

In this case, the Board did not find, nor has Bar Counsel argued, that any of the § 11(c) exceptions applies. Thus, they seem to agree that the findings in Virginia would not support the "substantially different discipline" of a fitness requirement. Instead, both the Board and Bar Counsel have recommended that we impose the additional sanction "based on the standard applied in original proceedings." We see nothing in our rules that would preclude this pairing of reciprocal and original discipline. Indeed, that appears to be the practical consequence of "augmenting" the record on which reciprocal discipline is based. *See Maxwell*, 798 A.2d at 529–31;

---

7. As the Board notes, although there may be more opprobrium attached to a disbarment, "[d]isbarment and a five-year suspension with a fitness requirement have the same practical effect in this jurisdiction, as a disbarred attorney has the right to apply for reinstatement after five years."

*Zilberberg*, 612 A.2d at 835. However, we have not yet been presented with a record and findings that justify the imposition of a fitness requirement as an original matter. *See Cater*, 887 A.2d at 24 (record "must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law").[8]

### D. Should We Simply Impose Identical Discipline?

█ In *Zilberberg*, where the record failed to "affirmatively show that a greater sanction [was] warranted," we declined to remand, but simply imposed identical reciprocal discipline. 612 A.2d at 835–36. At the present juncture, we are not willing to forego a remand in this case because the record raises legitimate reasons for further investigation of respondent's fitness to practice law. Moreover, respondent has resisted identical discipline (a five-year suspension) by invoking all five exceptions in Rule XI, § 11(c).[9] See note 2, *supra*. Although we reject some of these arguments, others cause us concern, and we will ask the Board to consider them anew.

Respondent has not established that he was denied due process in Virginia. He had notice and an opportunity to be heard.

In fact, he testified in the Circuit Court proceedings. The Supreme Court of Virginia did not deny him due process by treating the ruling on appeal as presumptively correct, or by requiring respondent to comply with its rules for filing the record. These principles are well-established in Virginia, *see, e.g., Morrissey v. Virginia State Bar*, 260 Va. 472, 538 S.E.2d 677, 678 (2000); *El–Amin v. Virginia State Bar*, 257 Va. 608, 514 S.E.2d 163, 165 (1999); Va. S.Ct. R. 5:11, and we apply similar rules in our own review. *See, e.g., Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 111 (D.C.1982) ("A judgment of any trial court is presumed to be valid.... A losing party who notes an appeal from such a judgment bears the burden of convincing the appellate court that the trial court erred.... In meeting that burden, it is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred." (internal quotation marks and citation omitted)); D.C.Code § 17–305(a) (2001) ("When the case was tried without a jury, the court [of appeals] may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it.").

8. The letters respondent wrote to the Circuit Court judges and to counsel for the Virginia State Bar may tend to call respondent's fitness to practice law into question. *See In re De Maio*, 893 A.2d 583, 589 (D.C.2006) ("Based on respondent's bizarre and erratic behavior before the Maryland courts, as well as the content of his various filings in this court, there is ample reason to have serious doubt about respondent's fitness to practice law."). However, we do not consider them sufficient, by themselves, to justify the imposition of a fitness requirement. In a case where an attorney wrote an insulting letter to a federal magistrate, we noted: "[I]t appears that in this jurisdiction the traditional method of dealing with contumacious behavior in the courtroom or in the course of a judicial pro-

ceeding is to cite the offender for contempt of court." *In re Evans*, 533 A.2d 243, 244–45 (D.C.1987) (censuring respondent instead of imposing reciprocal discipline of disbarment). *See also De Maio*, 893 A.2d at 587 (describing *Evans* as support for the Board's conclusion that this court has tended to treat "an attorney's personal attacks on a judge or court officer" differently from their treatment by the courts of some other jurisdictions).

9. Although respondent's brief does not contain a separate section dealing with the question of "substantially different discipline," his arguments fairly raise the issue. Moreover, the Board addressed the issue in its report, and Bar Counsel has briefed it.

We also agree with the Board that collateral estoppel precludes us from reconsidering respondent's jurisdictional and standing arguments. *See In re Bridges,* 805 A.2d 233, 234 (D.C.2002). Respondent's allegations of bias are completely unsupported. *See In re Banks,* 805 A.2d 990, 1003 (D.C.2002); *Faulkenstein v. District of Columbia Bd. of Medicine,* 727 A.2d 302, 308 (D.C.1999).

■ "The burden of proof on an attorney who would seek to establish the 'infirmity of proof' exception by the requisite clear and convincing evidence is a heavy one." *Bridges,* 805 A.2d at 235. This "exception is not an invitation to the attorney to relitigate in the District of Columbia the adverse findings of another court in a procedurally fair proceeding." *Id.* Respondent has not carried his burden here. *See id.* Nor has he established that a "grave injustice" would result if the same discipline were imposed by this court. *See, e.g., In re Beattie,* 930 A.2d 972, 979 (D.C.2007); *In re Day,* 717 A.2d 883, 890 (D.C.1998).

Nevertheless, both the paucity and the substance of the factual findings in the Virginia court's opinion give us substantial concern. When we take those findings at face value, we confront a serious question whether they justify a five-year suspension from the practice of law—in other words, whether "[t]he misconduct established warrants substantially different discipline in the District of Columbia." D.C. Bar R. XI, § 11(c)(4). Indeed, it is not clear that some of that conduct would "constitute misconduct in the District of Columbia." D.C. Bar R. XI, § 11(c)(5).

■ For example, the Circuit Court found that respondent had "been charged in Virginia with being drunk in public [and] for driving while intoxicated...." But the Virginia findings do not tell us the circumstances surrounding those charges or whether respondent was found guilty. "The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct." *Schware v. Board of Bar Examiners,* 353 U.S. 232, 241, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Similarly, a "charge" is not a conviction. We recognize that a conviction is not a prerequisite to a finding that a lawyer has violated Rule 8.4, *see In re Slattery,* 767 A.2d 203, 207 (D.C. 2001), but in this case the Virginia Circuit Court did not find that the underlying conduct had in fact occurred.

Respondent represents, without contradiction, that his arrests occurred in 1995 and 1996, so the remoteness of these events may bear upon the question of whether identical discipline is appropriate. He also states in his brief that he "pled not guilty and was fined $25.00" for being drunk in public and that he "pled not guilty and was fined $250.00" for driving while intoxicated. Bar Counsel asks us to infer from these obliquely-worded statements that respondent must have been found guilty of these alcohol-related offenses. Such inferences might be reasonable, but they would not be based upon the findings of the Virginia court. This uncertainty about whether respondent was convicted or not should be easy to resolve on remand.

Our cases involving discipline for intoxication-related offenses have involved either more modest sanctions or conduct more severe than respondent's. In *In re Reynolds,* 763 A.2d 713 (D.C.2000), for example, the respondent had been convicted (in Virginia) of two counts of driving while intoxicated, one count of "hit and run," and one count of eluding a police officer. *Id.* at 714. We noted that he had four prior convictions for DWI, one of which violated the terms of court-ordered probation. *Id.* He also had made false statements to pro-

bation officers and to the Hearing Committee. *Id.* Nevertheless, we accepted a recommendation (to which no exceptions were filed) that he be suspended for six months and be required to demonstrate fitness as a condition of reinstatement. *Id.* at 715. In *In re Murtaugh,* BDN 45–03 (Inf.Adm. Dec. 1, 2003), Bar Counsel issued an informal admonition for, among other things, a violation of Rule 8.4(b) where the underlying conduct consisted of four alcohol-related arrests and three alcohol-related convictions. By contrast, we disbarred a lawyer (but stayed imposition of that sanction in favor of five years of probation) in *In re Kersey,* 520 A.2d 321, 328 (D.C.1987). The lawyer's twenty-four violations of the Code of Professional Responsibility included two arrests for drunk driving and another alcohol-related accident, but also frequent missed or late court appearances, over 100 blackouts, no financial record-keeping system, failure to file Criminal Justice Act vouchers, commingling and personal use of client funds, a prior reprimand and censure by the District of Columbia Bar, and the complete domination of his life by alcohol. *Id.* at 324.

As recited above, the Virginia court did describe the basis for the obstruction of justice charge. This conduct certainly was foolhardy as well as illegal, and it may reflect adversely upon respondent's "fitness as a lawyer," but it does not call his honesty or trustworthiness into question to the same extent that an attempt to obstruct justice by bribing a juror or a witness would do. *See In re Wilkins,* 649 A.2d 557 (D.C.1994) (Bar Counsel did not carry burden of showing that conviction for misdemeanor offense of obstructing justice in Virginia involved moral turpitude; six-month suspension imposed).

The abbreviated findings about respondent's litigating history do not add compelling support for the proposed sanction. The Circuit Court found that respondent "has a long history of filing civil actions against numerous and various defendants on grounds that are, at best, of questionable merit." Perhaps the court was attempting to be kind, but it is fair to say that much litigation is "of questionable merit." Although it may have thought so, the court did not say that the civil actions were frivolous, malicious, or filed for purposes of harassment. Nor did it find that respondent had violated Virginia Rule of Professional Conduct 3.1 (related to frivolous claims) or 3.4(j) (related to filing a suit that "would serve merely to harass or maliciously injure another"). *Cf. In re Shieh,* 738 A.2d 814, 819 (D.C.1999) ("Undeterred by legal sanctions and even criminal contempt, [respondent] filed suit after suit, motion after frivolous motion, and appeal after frivolous appeal . . . solely 'to harass his opponents . . . .' "; reciprocal discipline of disbarment imposed). On the other hand, the fact that a federal judge enjoined respondent from filing additional complaints without leave of court certainly is some indication that the suits were frivolous and harassing in nature.

We recognize that the whole often is greater than the sum of its parts, but the findings of the Virginia Circuit Court leave us with significant questions about the extent of respondent's misconduct and whether a five-year suspension would be imposed in original proceedings here. To borrow the words of a colleague, we "do not think that the presumption in favor of reciprocal discipline is so compelling that it applies even where the other jurisdiction's proceedings leave significant doubt as to the extent of the attorney's wrongful conduct." *Zilberberg,* 612 A.2d at 836 (Steadman, J., dissenting from a decision not to remand for further factual inquiry). An amplified report from the Board will greatly assist us in resolving these issues.

In sum, we direct the Board to take a closer look at whether the conduct established in the Virginia proceedings constitutes misconduct in the District of Columbia and whether substantially different discipline is warranted. The proceedings in Montana do not provide a basis for reciprocal discipline. Any recommendation of greater discipline must be clearly supported by the record. Of course, in accordance with our previous order, the Board retains the option of proceeding *de novo*. This matter is remanded to the Board for further proceedings consistent with this opinion.[10]

*So ordered.*

10. Consistent with our order of February 27, 2006, respondent remains suspended from the practice of law in the District of Columbia pending final disposition of this proceeding.