*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-BG-104

IN RE DAVID A. VESEL, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 423456)
(BDN 462-13)

(Submitted May 7, 2014                                    Decided September 25, 2014)

*David A. Vesel*, pro se.

*Wallace E. Shipp, Jr.*, Bar Counsel, and *William R. Ross*, Assistant Bar Counsel, were on the brief for the Office of Bar Counsel.

Before THOMPSON, BECKWITH, and EASTERLY, *Associate Judges*.

THOMPSON, *Associate Judge*: Respondent David A. Vesel was admitted to the District of Columbia Bar on April 9, 1990, and in 1994 was also admitted to practice in North Carolina. After a hearing on April 24, 2013, the Disciplinary Hearing Commission of the North Carolina State Bar ("the Hearing Commission") disbarred him from the practice of law in that jurisdiction, finding, *inter alia*, that he embezzled thousands of dollars in entrusted client funds. As he was required to do by D.C. Bar R. XI, § 11 (b), respondent self-reported his North Carolina

discipline to the District of Columbia Bar, and on February 12, 2014, this court suspended him from the practice of law in the District of Columbia on an interim basis[1] and ordered him to show cause why he should not be disbarred in this jurisdiction. The Office of Bar Counsel ("Bar Counsel") recommends that we apply reciprocal discipline and disbar respondent. Concluding that none of the exceptions to the general presumption in favor of reciprocal discipline that respondent invokes is applicable in this case, we accept Bar Counsel's recommendation and order respondent's disbarment.

**I.**

After the April 24, 2013, hearing, the North Carolina Hearing Commission issued an Order of Discipline ("Order") in which it set out detailed findings of fact based upon what it found was "clear, cogent and convincing evidence." The Hearing Commission concluded as a matter of law that, at various times between January 2005 and June 2008, respondent violated the following Rules of Professional Conduct of the North Carolina State Bar (the "State Bar"): Rule 1.15-3 (d) (failure to reconcile trust accounts); Rule 5.4 (a) (sharing legal fees with a

---

[1] Respondent had already been administratively suspended, for non-payment of dues, since December 2, 1996.

non-lawyer); Rule 1.15-2 (a) (failure to maintain entrusted client property separate from property of the lawyer); Rule 1.15-2 (j) (using entrusted client property for the benefit of others without client authorization); Rule 8.4 (b) (committing criminal acts that "reflect[] adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer"); Rule 8.4 (c) ("engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation"); Rule 5.3 (failure to "make reasonable efforts to ensure" that a non-lawyer employee's conduct is "compatible with the professional obligations of the lawyer"); Rule 1.15-2 (m) (failure to "promptly pay or deliver to the client, [and] to third persons as directed by the client, . . . entrusted property belonging to the client"); Rule 1.3 (failure to "act with reasonable diligence and promptness in representing a client"); Rule 1.15-2 (h) (drawing items on trust accounts without "indicat[ing] on the item[s] the client balance on which the item is drawn"); and Rule 1.15-2 (i) (drawing an item on a trust account "made payable to cash or bearer"). The facts establishing these violations involved several real estate matters in which respondent (and at times his employee Cynthia Driscoll, an "independent contract paralegal for [Respondent's] law practice"), among other things, withdrew from client trust accounts funds to which he was not entitled, failed to pay clients' creditors with funds that clients had entrusted to him for that purpose, failed for several months to disburse funds for the payment of title insurance premiums, and collected legal fees from a trust account even though he

"did not have any funds in [the account] that he was entitled to receive." The Hearing Commission found that in one real estate matter (the Parrish matter), the result of respondent's failure to pay off the $248,002 first mortgage on the property (for which pay-off there were "insufficient funds in [respondent's] trust accounts") was that foreclosure proceedings were instituted against the clients' home and the clients' credit ratings were severely damaged. The Hearing Commission Order disbarred respondent from the practice of law.

Respondent argues that this court should not impose reciprocal discipline because (1) the procedure before the Hearing Commission "constituted a deprivation of due process"; (2) "there was such an infirmity of proof establishing [his] misconduct as to give rise to the clear conviction that this Court could not, consistent with its duties, accept as final the finding of the [Hearing Commission]"; and (3) imposition of identical discipline "would be unjust."

**II.**

The following principles govern our review: "In cases of reciprocal discipline, D.C. Bar R. XI, § 11 (c) establishes a rebuttable presumption in favor of imposing the same sanction that the original disciplining jurisdiction imposed." *In*

*re Carithers*, 54 A.3d 1182, 1184-85 (D.C. 2012). "Reciprocal discipline shall be imposed" unless the attorney demonstrates, by clear and convincing evidence, that:

> (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
>
> (3) The imposition of the same discipline by the Court would result in grave injustice; or
>
> (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
>
> (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C. Bar R. XI, § 11 (c). "Determining whether one or more of the [§ 11 (c)] exceptions applies is a question of law or ultimate fact, and therefore the court's review is *de novo*." *Carithers*, 54 A.3d at 1185 (internal quotation marks omitted). Rule XI, § 11 (c) establishes a "rigid standard," and instances in which one of the described exceptions is applicable "should be rare." *In re Sibley*, 990 A.2d 483, 487, 488 (D.C. 2010) (internal quotation marks omitted).

## III.

We first consider respondent's claim that he was deprived of due process before the Hearing Commission. "[D]ue process is afforded when the disciplinary proceeding provides adequate notice and a meaningful opportunity to be heard." *In re Edelstein*, 892 A.2d 1153, 1157 (D.C. 2006) (quoting *In re Day*, 717 A.2d 883, 886 (D.C. 1998)); *see also In re Zdravkovich*, 831 A.2d 964, 969 (D.C. 2003) ("Our standard . . . comports with constitutional due process requirements because the attorney either has had an evidentiary hearing or had the right to one.").

Respondent admits that he was "on notice of the underlying hearing . . . and elected not to participate in same." Thus, he makes no claim that the Hearing Commission process was "lacking in notice or opportunity to be heard." D.C. Bar R. XI, § 11 (c) (1). Rather, he explains that he made the decision not to participate in the Hearing Commission hearing because of the North Carolina State Bar's "delay in formulating their theory" and "bad faith in participating in good faith discovery" — both of which, he asserts, "deprived [him] of an opportunity to secure the . . . documentation necessary to contest the allegations" against him. Respondent also states that he was "unaware of the precise nature of the State Bar's allegations against him until mere weeks before the hearing date."

We discern no merit in respondent's deprivation-of-due-process argument. The record shows that the State Bar filed its amended complaint against respondent on August 20, 2012 — almost eight months before the Hearing Commission hearing. Much like the State Bar's initial complaint filed on October 20, 2011, the amended complaint set out the State Bar's theory in great detail; for example, it specifically identified respondent's three trust accounts and alleged that respondent failed to reconcile them during specified time periods; alleged that respondent "embezzled entrusted client funds" from Wachovia Account Nos. 1, 2, and 3; cited the dates and client initials for the real estate closing matters for which title insurance premiums were not paid from funds escrowed for that purpose; alleged that only respondent had the authority to wire funds from the trust accounts and that, on Driscoll's behalf, respondent wired funds, to which Driscoll was not entitled, in specified amounts, from specified trust accounts, on specified dates; and alleged that in a specified real estate closing matter, respondent failed to follow the mortgage lender's instructions to use a portion of the closing funds to pay off seven creditors. The amended complaint also cited the Rules of Professional Conduct that respondent was alleged to have violated and included a prayer for disciplinary sanctions in accordance with cited provisions of the North Carolina General Statutes and the North Carolina Administrative Code.

As to respondent's contention that the State Bar exhibited bad faith in discovery, respondent acknowledges that the State Bar ultimately turned over to him in October 2012 a client grievance, investigative files and other documents he had sought, and that the Hearing Commission continued the hearing, from December 6, 2012, to April 24, 2013, to afford him additional preparation time. Even if it is true that the delay caused a loss of contemporaneous documentation or made it more difficult for respondent to follow up with potential witnesses, the Hearing Commission hearing was the proper forum for respondent to raise those claims and to explain the specifics of how he was prejudiced, but he forwent that opportunity. *Cf. Zdravkovich*, 831 A.2d at 969 (rejecting infirmity of proof argument even where the respondent was unable to testify at the Maryland proceeding because of illness, since the record revealed no evidence that he had sought a continuance or that the Maryland trial court had denied him any accommodation).

**IV.**

"The burden of proof on an attorney who would seek to establish the 'infirmity of proof' exception by the requisite clear and convincing evidence is a heavy one." *In re Ditton*, 954 A.2d 986, 994 (D.C. 2008) (internal quotation marks

omitted). "This exception is not an invitation to the attorney to relitigate in the District of Columbia the adverse findings of another court in a procedurally fair proceeding." *Id.* (internal quotation marks omitted).

Although respondent argues that there was an "infirmity of proof establishing [the] misconduct" for which he was disbarred in North Carolina, he does not claim that the evidence presented to the Hearing Commission did not support its findings. Instead, his claim is that the State Bar did not present certain evidence that was favorable to him.[2] With regard to the belated disbursements for title insurance premiums in connection with several real estate closings, for example, he asserts that "the rendition of 'facts' advanced by the State Bar during the hearing . . . did not provide a full and complete picture of the events that

---

[2] Since he did not attend the hearing, he bases this assertion on his review of the Hearing Commission's Order. He asserts that despite his non-attendance at the hearing, he "had a reasonable expectation that the State [B]ar would present the facts of the underlying case fairly and accurately," but that what actually occurred was that certain facts "were completely ignored or distorted as evidenced by some of the findings reflected in the Order . . . ."

actually transpired nor the efforts that the Respondent undertook to minimize the impact on the clients."[3]

Respondent further argues that "the perceived embezzlement . . . was the result of (1) accounting errors; and (2) the inability of Respondent to obtain the necessary exculpatory documents . . . ." Respondent emphasizes the Hearing Commission's finding that Driscoll embezzled funds from his firm. He asserts that she did so without his knowledge and that, upon his discovery of her actions, she erased all of the relevant data from his computer server and individual computers and removed all his "paper bank records and supporting documents[,] . . . ledger entries and reconciliations." He complains that the State Bar "undertook no independent investigation" to recover these files from Driscoll (who, respondent asserts, was a State Bar Certified Paralegal), "never subpoenaed [Ms. Driscoll's] bank records nor made any effort to restrain her access to funds," and never took any action against her, but simply "s[ought] information from her regarding the alleged management of [Respondent's] firm . . . ." Respondent asserts that Driscoll's statements and conduct show that she "orchestrated her deceit from day one through the retaining and manipulation of documentation solely for the

_____

[3] Respondent also complains that the State Bar "wholly neglected" his efforts to remedy the nonpayment of creditors and to satisfy an outstanding mortgage, electing instead "to simply point out the late payment[s]."

purpose of deflecting attention away from her own wrongdoing in the event her fraud was discovered," and further complains that the State Bar did not "afford[] [Respondent] one inference in [his] favor while nearly every self-serving assertion advanced by [Ms. Driscoll] against [Respondent's] interest spurred investigative inquiries."

The problem with all these arguments is that respondent may not elect to forgo his disciplinary hearing and then complain that certain evidence should have been presented there. *Cf. In re Demos*, 875 A.2d 636, 644 (D.C. 2005) ("Because respondent was afforded an opportunity to present evidence on his own behalf at a proceeding . . . that appears from the record to have been fundamentally fair, we find no merit in this argument."). While evidence or arguments about what respondent alleges was Driscoll's responsibility (for what he refers to as the "train wreck" at his firm) might have affected the Hearing Commission's conclusions about the degree of respondent's culpability, this was evidence respondent was free to advance at the hearing. Instead, the evidence at the disciplinary hearing was effectively uncontested, and we have no reason "not to respect [the] decision" of the Hearing Commission. *In re Morrissey*, 648 A.2d 185, 189 (D.C. 1994).

## V.

Finally, we address respondent's claim that imposition of identical reciprocal discipline "would be unjust." We disagree. We note, for example, that respondent provides no explanation of how any documentation that he was unable to recover could have refuted the evidence — which he admitted in the answer he filed with the Hearing Commission — that only he made wire transfers from the trust accounts, and that he wired trust account funds "to expedite" Driscoll's mortgage payments to U.S. Bank, including in the circumstance where she "tendered a check to be deposited into the firm's account(s) to cover all or part of the amount being wired . . . ." This was an admission of a pattern of commingling that, taken together with the misappropriation that resulted from respondent's failure to adequately supervise Driscoll, likely warranted disbarment even if respondent's other unauthorized uses of entrusted client property — which the Hearing Commission found by "clear, cogent and convincing evidence" — are disregarded. *See*, *e.g.*, *In re Hessler*, 549 A.2d 700, 712 (D.C. 1988) (stating that "disbarment is clearly the appropriate sanction in this jurisdiction" for "multiple

instances of commingling plus an intentional misappropriation of a client's funds sufficient to establish dishonesty or a pattern of such misconduct").[4]

## VI.

Respondent has not shown by clear and convincing evidence that any exception to the presumption in favor of reciprocal discipline applies here. Accordingly, it is

ORDERED that Respondent David Vesel is hereby disbarred from the practice of law in the District of Columbia.

FURTHER ORDERED that for purposes of reinstatement, respondent's disbarment will be deemed to have commenced on March 7, 2014, the date he filed his D.C. Bar. R. XI, § 14 (g) affidavit.

*So ordered.*

---

[4]  Moreover, the fact that respondent has not been practicing law within the District of Columbia and has described no plan to practice here weighs heavily against a claim that disbarment from practice in this jurisdiction would be a grave injustice. *Cf. In re Fuchs*, 905 A.2d 160, 164 (D.C. 2006) (rejecting as "meritless" the argument that a one-year suspension would work a "grave injustice" where the respondent stipulated that he had never practiced in the District of Columbia, had no relationship with any counsel in the District of Columbia, had no clients or office in the District of Columbia, and had no plans to practice law in the District of Columbia).